## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GERARD DENEZ CHESTNUT,

     Plaintiff,

v.                           CASE NO.:  3:18-cv-1302-J-32JRK

TONY KNIGHT, et al,

     Defendants.

_____/

## MOTION TO DISMISS AND/ OR REVOKE IN FORMA PAUPERIS (IFP) STATUS

       COMES NOW Defendants TEDDY TOMLIN, BRETT GILLESPIE, ROBERT ATTEBERRY, ROBERT BROWN, CHRISTOPHER MCKENZIE, STEVEN LOLA, AND ERIK MCCOY, BLITCH, LOUVIE, OSTEEN, THOMPSON, HALL, AND HOWELL through undersigned counsel and pursuant to Rule 12, *Federal Rules of Civil Procedure*, and Rule 3.01, *Local Rules for the Middle District of Florida*, hereby files their Motion to Dismiss*,* and respectfully asks that Plaintiff's Second Amended Complaint (ECF No. 10) be dismissed *without prejudice* for Failure to Disclose Litigation History, and/ or prays this Court to Revoke the Plaintiff's *In Forma Pauperis* (IFP) status and dismiss this case *without prejudice* based on the Plaintiff's failure to show Imminent Danger.

       In support thereof we would show as follows:

2

# BACKGROUND

Plaintiff's Second Amended Complaint (SAC) alleges that while incarcerated at Florida State Prison (FSP), he was the victim of retaliation, threats, discrimination, excessive force, and officers conspiring with inmates to attack him.  He makes these allegations against the twelve Defendants named above.  ECF No. 10, at 3.

He alleges the attacks made against his person or other conduct occurred on the following dates:

A. July 14, 2017: excessive force, threats: chemical agents.  <u>Id.</u>, at 8.
B. October 10, 2017: excessive force: slamming on the ground.  <u>Id.</u>, at 9.
C. April 4, 2018: discrimination, threats.  <u>Id.</u>, at 10.
D. April 5, 2018: threats. <u>Id.</u>
E. April 9, 2018: threats. <u>Id.</u>
F. April 10, 2018: threats. <u>Id.</u>
G. April 12, 2018: discrimination, threats.  <u>Id.</u>, at 11.
H. April 30, 2018: set up for inmate attack, stabbing.  <u>Id.</u>
I. April 30, 2018: excessive force, battery, threats, pushed down through the doorway by officers.  <u>Id.</u>
J. May 4, 2018: property status and excessive force, chemical agents.  <u>Id.</u>, at 12.
K. June 6, 2018: threats and excessive force, chemical agents.  <u>Id.</u>, at 12-13.
L. June 28, 2018: excessive force, dragged and beaten. <u>Id.</u>, at 13.
M. September 17, 2018: property status and chemical agents. <u>Id.</u>
N. October 1, 2018: threats. <u>Id.</u>, at 14.

O. December 7, 2018; threats and excessive force, beaten by
    Defendants.  <u>Id.</u>, at 14-15.

Plaintiff seeks compensatory and punitive damages in unspecified amounts, as well as unspecified injunctive and declaratory relief.  <u>Id.</u>, at 17.

The Plaintiff originally filed this case on November 5, 2018.  ECF No. 1.  He filed the Amended Complaint on January 7, 2019.  ECF No. 10.

For the reasons outlined below, Plaintiff's Second Amended Complaint should be dismissed with prejudice as to the defendants named herein.

<u>**MEMORANDUM OF LAW**</u>

**I.    Plaintiff Failed to Make a Full Disclosure of his Litigation History:**

Plaintiff failed to candidly disclose his litigation history to the court.

<u>*Facts*</u>

1. In the Amended Complaint in Section VIII, Plaintiff indicated that he was barred under the "three strikes rule." (ECF No. 10, at 20).

2. The following question is posed to Plaintiff on the complaint form: "Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?" (ECF No. 10, at 21). Plaintiff checked the box for 'No' in response to this question.

4

3. Plaintiff has at least five (5) actions that Defendants have been able to identify which Plaintiff has raised regarding allegations raised in Plaintiff's current Amended Complaint.

4. In <u>Gernard Chestnut v. Sgt. Attaberry, et al.</u>, Middle District of Florida Jacksonville Division case no. 3:18-cv-489-J-34PDB, Plaintiff raised the allegations contained in paragraphs five through seven of his Amended Complaint. (ECF No. 10, at 10-11).[1] <u>See</u> Defendants' Exhibit A.

5. In <u>Gernard Chestnut v. Sgt. Gillespie, et al.</u>, Middle District of Florida Jacksonville Division case no. 3:18-cv-615-J-32MCR, Plaintiff raised the allegations contained in paragraphs eight and nine of his Amended Complaint. (ECF No. 10, at 11).  <u>See</u> Defendants' Exhibit B.

6. In <u>Gernard Chestnut v. Lt. Knight, et al.</u>, Middle District of Florida Jacksonville Division case no. 3:18-cv-631-J-39PDB, Plaintiff raised the allegations contained in paragraphs five through eight and ten of his Amended Complaint. (ECF No. 10, at 10-12).  <u>See</u> Defendants' Exhibit C.

7. In <u>Gernard Chestnut v. Sgt. Robert Attaberry, et al.</u>, Middle District of Florida Jacksonville Division case no. 3:18-cv-875-J-34JRK, Plaintiff raised the allegations contained in paragraph 12 of his Amended Complaint (ECF No. 10, at 13).  <u>See</u> Defendants' Exhibit D.

---

[1] Defendants respectfully request that this Court take judicial notice of Petitioner's previous litigation history pursuant to Rule 201, Federal Rules of Evidence.

8. In <u>Gernard Chestnut v. Captain Lola, et al.</u>, Middle District of Florida Jacksonville Division case no. 3:18-cv-1505-J-25JBT, Plaintiff raised the allegations contained in paragraph 15 of his Amended Complaint. (ECF No. 10, at 14). <u>See</u> Defendants' Exhibit E.

9. The Complaint form also asked Plaintiff "Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?" to which Plaintiff responded "Yes." (ECF No. 10, at 21-22). However, the following section stated that if Plaintiff's answer to that question was Yes, to "describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)." Plaintiff listed none of the above-listed cases. Further, Plaintiff listed none of his other prior cases before this Court. <u>See</u> e.g., case nos. 3:15-cv-1173, 3:15-cv-1270, 3:15-cv-1343, 3:17-cv-307, 3:17-cv-424, 3:18-cv-1082, 3:18-cv-1171; <u>See</u> Defendants' Composite Exhibit F. Plaintiff referenced only three cases he previously filed in the Northern District of Florida and made a vague statement that he filed three other cases, two of which were voluntarily dismissed. (ECF No. 10, at 24). The voluntarily dismissed cases referred to are case nos. 3:15-cv-46 and 3:15-cv-69 before the Northern District of Florida Pensacola Division. Plaintiff made no other reference or attempt to include any detail of the numerous actions he has filed before this Court.

### *Argument*

Plaintiff provided none of the required information regarding his prior litigation history, particularly as it relates to duplication of the allegations contained in this Amended Complaint in prior cases before this Court. <u>Compare</u> ECF No. 10; Defendants' Exhibits A-E.

Further, Plaintiff provided none of the required candor regarding his general litigation history, particularly that before this Court. <u>Compare</u> ECF No. 10; Defendants' Composite Exhibit F. This is particularly egregious behavior considering that all of the referenced cases were dismissed with references in the associated orders to Plaintiff's repeated abuse of judicial process. <u>See</u> <u>generally</u> Defendants' Exhibits A-F. Further, almost all of those Orders specifically referenced Plaintiff's status as a frequent-filer and noted his failure to adequately provide candor in disclosing his prior litigation history. <u>Id.</u>

This conduct is considered an abuse of the judicial process. <u>Hood v. Tompkins</u>, 197 F. App'x. 818, 819 (11th Cir. 2006) (unreported opinion). Courts in the Eleventh Circuit that have encountered this issue have repeatedly upheld dismissal for the type of conduct exhibited by the Plaintiff in this case. <u>Id.</u>; <u>Sills v. Marion County Jail</u>, No. 5:10-cv-204-Oc-29GRJ, 2010 WL 2367237 (M.D. Fla. June 13, 2010); <u>Taylor v. Allen</u>, No. 07-0794-CG-M, 2009 WL 1758801 (S.D. Ala. June 16, 2009); <u>Hinson v. Escambia County Sheriff's Dep't</u>, No. 3:09cv112/MCR/EMT, 2009 WL 1606517

(N.D. Fla. May 6, 2009).

As stated by United State Magistrate Judge Miles Davis in Paulcin v. McNeil,

No. 3:09cv151/LAC/MD, 2009 WL 2432684, at *3 (N.D. Fla. Aug. 9, 2009),

> The court has the authority to control and manage matters such as this
> pending before it, and plaintiff's *pro se* status does not excuse him from
> conforming to acceptable standards in approaching the court.  If the court
> cannot rely on the statements or responses made by the parties, it
> threatens the quality of justice.  The court will not tolerate false responses
> or statements in any pleading or motion filed before it.  Here, plaintiff
> falsely responded to a question on the complaint form, as detailed above.
> Plaintiff knew, from reading the complaint form, that disclosure of all
> prior actions was required and that dismissal of this action may result
> from his untruthful answers.  If plaintiff suffered no penalty for his
> untruthful responses, there would be little or no disincentive for his
> attempt to evade or undermine the purpose of the form.  Therefore, this
> court should not allow plaintiff's false responses to go unpunished.  The
> undersigned recommends that an appropriate sanction for plaintiff's
> abuse of the judicial process in not providing the court with true and
> complete responses is to dismiss this cause without prejudice.  Plaintiff
> should also be warned that such false responses, filed herein or filed in
> the future, will not be ignored and may result in more severe and long-
> term sanctions.  See, e.g., United States v. Roberts, 308 F.3d 1147 (11th
> Cir.2002) (inmate convicted of perjury for false statement made on
> pleading filed in federal court).

See Sills, 2010 WL 2367237, at *3 (finding that "the plaintiff's failure to provide

truthful responses on the complaint is an abuse of judicial process" and then dismissing

the complaint).

The purpose of the prior actions questions posed on the civil rights complaint

form is as noted by Judge Antoon, in Williams v. Wiggins, No. 6:09-cv-943-Orl-

28DAB, 2010 WL 4983665, at *2 (M.D.Fla. Dec. 2, 2010):

> The information also helps the court to consider whether the action is

related to or should be considered in connection with another action, or whether a holding in another action affects the current action. Further, since prisoner plaintiffs generally proceed pro se, the information helps the court to determine their litigation experience and familiarity with the legal terrain of the current action.

(quoting Johnson v. Crawson, No. 5:08cv300/RS/EMT, 2010 WL 1380247, at *2 (N.D. Fla. Mar. 3, 2010).

Equally important is that because prisoner litigation has become a sort of recreational activity for those who have little to lose and everything to gain[2], *pro se* inmate litigants must be held accountable for their actions if they choose to initiate federal civil rights litigation. As noted by Magistrate Judge Elizabeth Timothy,

> If Plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form. *Furthermore, if word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants.* Therefore, this court should not allow Plaintiff's false responses to go unpunished.

Johnson v. Crawson, 2010 WL 1380247, at *2 (emphasis added).

Conversely, if a prisoner's failure to abide[3] by the requirements of the federal courts is promptly and appropriately addressed by the Court word could spread through the prison populations that the federal courts will not tolerate a cavalier attitude even by *pro se* inmate litigants. Holding the *pro se* inmate litigant responsible

---

[2]   See Harris v. Garner, 216 F.3d 970, 991 (11th Cir. 2000) (citing to the Congressional Record and statements by Senators Dole and Kyle).

[3]   Even if the plaintiff *may not have intended to deceive*, because the court relies on the statements and responses submitted, such dishonesty concerning filing history threatens the quality of justice. See Brown v. Overstreet, No. CV 107-113, 2008 WL 282689, at *1 (S.D. Ga. Jan. 30, 2008).

for the representations in his pleadings and imposing sanctions with teeth, could promote prisoner respect for the federal courts, lessen the impact on efficiency cited by Magistrate Judge Timothy,[4] through more thoughtful and truthful inmate pleadings and certainly not hurt rehabilitative efforts.

Completely omitting the aforementioned federal case history demonstrates the Plaintiff's total lack of candor to the tribunal, which is particularly egregious in light of the multiple times this Court has instructed him of the importance of providing his litigation history when filing such an action. Rule 11(b), Federal Rules of Civil Procedure requires candor and honesty in submission to the courts.  Rule 41(b) Federal Rules of Civil Procedure, provides for involuntary dismissal under these circumstances.  28 U.S.C. § 1915(e)(2)(B)(i), allows the court to dismiss an action at any time if found to be malicious.

The rules have to mean something.  Therefore, we would respectfully ask the Court to dismiss this case under Rule 41(b).


**II.    Plaintiff's *In Forma Pauperis* (IFP) Status Should be Revoked and this Cause dismissed *without prejudice* for Plaintiff's Failure to Show Imminent Danger and Misrepresentation of Fact.**

---

[4]   See <u>Johnson v. Crawson</u>, 2010 WL 1380247, at *2; <u>see also</u> <u>Cochran v. Gilo</u>, No. 4:07cv425-SPM/AK, 2010 WL 716536, at *1 (N.D.Fla. Feb. 24, 2010) (dismissal as a sanction due to the plaintiff's dishonesty in listing prior federal cases and failure to exhaust); <u>see also</u> <u>Jackson v. Martin</u>, No. 3:09cv270/LC/MD, 2011 WL 833995, at *4 FN 3 (N.D. Fla. Jan. 31, 2011) (noting that dismissal would be appropriate on the grounds that failure to disclose prior litigation is considered *malicious* due to the plaintiff's abuse of judicial process).

The Plaintiff has not shown that he is in imminent danger.  Thus, he is not entitled to proceed under the "imminent danger" exception to the "three strikes" rule 28 U.S.C. §1915(g).  The Plaintiff claimed that he is in danger of serious physical injury.  <u>See</u> ECF No. 2.   However, the evidence wholly refutes his assertions, and shows many are outright misrepresentations.  We are asking the Court to revoke his *In Forma Pauperis (IFP)* status and dismiss his Complaint *without prejudice*.

## **STANDARD**

To test whether an inmate is entitled to proceed under a theory of imminent danger of serious physical injury, the IFP inmate must present the Court with sufficient facts.  <u>Brown v. Johnson</u>, 387 F.3d 1344, 1350 (11th Cir. 2004).

Similar to Rule 12(b)(6) motions, the inmate's complaint is to be liberally construed as to imminent danger.  His "complaint, as a whole, [must] allege[] imminent danger of serious physical injury" and the allegations are liberally construed and accepted as true.

However, for this exception to apply, the inmate must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," <u>Martin v. Shelton</u>, 319 F.3d 1048, 1050 (8th Cir. 2003). Vague allegations of harm and unspecific references to injury are insufficient, <u>White v. State of Colorado</u>, 157 F.3d 1226, 1231-32 (10th Cir. 1998).

Further, an inmate's claim that he is faced with a *past imminent danger* is an insufficient basis to allow him to proceed IFP pursuant to the 'imminent danger' exception. Medberry v. Butler, 185 F.3d 1189, 1192-93 (11th Cir. 1999).

The 'imminent danger' exception applies to "genuine emergencies" "where time is pressing," "a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.'" Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002). Examples of such real exigent situations of "imminent danger of serious physical injury" involve specific allegations of imminent injuries due to denial of medication or due to conditions, denial of treatment resulting in infection, or incidents involving an ongoing pattern of assaults and threats. See, e.g., Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) ('imminent danger' allegation of recent beating, along with three separate threatening incidents involving similar staff shows ongoing pattern of acts); Fletcher v. Menard Correctional Center, 623 F.3d 1171, 1172-73 (7th Cir. 2010) ('imminent danger' allegation of an untreated severe injury that resulted from a cell extraction); Jackson v. Jackson, 335 F. App'x 14 (11th Cir. 2009) (unreported op.) ('imminent danger' allegation of denial of hernia surgery resulting in suffering of pain in testicles and abdomen and injury of blood in urine, nausea, weight loss); Brown, 387 F.3d at 1350 ('imminent danger' allegation that medication for HIV and hepatitis stopped, resulting in "prolonged skin and newly developed scalp infections, severe pain in the eyes and vision problems, fatigue and prolonged stomach pains") McAlphin v. Toney, 375 F.3d 753 (8th Cir. 2004)

('imminent danger' allegation of need for tooth extractions and a spreading mouth infection); Ciarpaglini v. Saini, 352 F.3d 328 (7th Cir. 2003) ('imminent danger' allegations of discontinued medicine); Gibbs v. Cross, 160 F.3d 962 (3d Cir. 1998) ('imminent danger' allegation where conditions resulted in "severe headaches, change in voice, mucus that is full of dust and lint, and watery eyes").

Therefore, the inmate *fails to* sufficiently allege the 'imminent danger' exception when the inmate provides only non-specific allegations, allegations of prior injuries or prior conditions, or fails to allege ongoing danger.  See, e.g., Harris v. City of New York, 607 F.3d 18 (2d Cir. 2010) (***conclusory*** allegation only that inmate was and is suffering imminent danger of serious injury while the specific allegation merely involved ***prior*** incidents of staff abuse); Polanco v. Hopkins, 510 F.3d 152 (2d Cir. 2007) (allegation of ***prior*** exposure to mold); Martin, 319 F.3d at 1049-50 (***omission of ongoing*** danger when inmate alleged incidents of being forced to work in 30-degree below weather without warm clothing and 98-degree weather despite his high blood pressure); White, 157 F.3d at 1231-32 (***non-specific*** allegations where inmate merely alleged that he "ha[s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life-threatening degree").

Here, as evidenced above, not only are Plaintiff's allegations of previous attacks on his person unsubstantiated as shown by the video evidence, but he has failed to sufficiently allege anything more than a conclusory allegation that he is in imminent

danger.[5]  Plaintiff has alleged that these incidents are an orchestrated pattern of attacks against him, however the videos show that no such attacks have been made. Furthermore, Plaintiff makes no substantiated claim that he is in danger of any future injury that is more than a conclusory statement.  He provides no basis for any belief that he is in danger of future harm.

Plaintiff is attempting to circumvent the "three-strikes" rule which applies to him as a result of his previous abuse of the judicial system in a way that is similarly abusive, due to the outright misrepresentations of fact by Plaintiff. Coupled with the argument provided above (Issue I, Plaintiff's failure to disclose his litigation history of overlapping claims), this abuse demonstrates that Plaintiff is continuing and will continue to misuse this Court's resources in any way possible.

Again, the rules have to mean something. Consequently, this Court should revoke Plaintiff's in forma pauperis status and dismiss this action. See McLeod v. Secretary, Fla. Dep't of Corr., No. 16-11062, 2019 WL 2524295 (11th Cir. June 19, 2019); see also Gssime v. Burge, 08-CV-6404 CJS (mwp), at *3 (W.D.N.Y. Feb. 4, 2013); Jackson v. Goord, 06-CV-6172 CJS(MWP), at *5 (W.D.N.Y. Feb. 3, 2014).

### *The Court May Properly Consider the Exhibits Attached*

While ordinarily, a Motion to Dismiss should not cite to exhibits not attached to the complaint, the offered video exhibits are properly considered in this instance.

---

[5] The video evidence will be examined in detail later in this motion.

The Court may consider extrinsic documents regarding the (1) plaintiff's central claim (2) whose authenticity is not challenged.  Findwhat Investor Group v. Findwhat.com, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011), Horne v. Potter, 392 F. App'x 800, 802 (11th Cir 2010) (unreported op.) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)), and Brayshaw v. Garrett, No. 4:10cv272-SPM/WCS, 2011 WL 971147, at *4 (N.D.Fla. Jan. 16, 2011) (unpublished op.).

In the instant case the Plaintiff references video and cameras repeatedly in his Amended Complaint.  Indeed, Plaintiff continuously states that the Defendants took action intentionally off camera, or evaded the cameras, or asks for relief related to cameras.  ECF No. 10, at 8, 9, 11, 14, 17.  The videos are properly considered pursuant the authority cited above.

Indeed, by his multiple claims about video evidence, the Plaintiff "opens the door" to us offering video records with the Motion to Dismiss without the motion being treated as a Motion for Summary Judgment.  See Crotec v Industries, Inc. v Sum Holding LP, 949 F.2d 42 (2d Cir 1991).  As in the Crotec case, here "there was undisputed notice to plaintiff[] of their [the videos'] contents and they were integral to plaintiffs' claim."  Id., at 48.

There is ample precedent for the Court considering the videos and deciding the Defendants' motion under Rule 12(b).  Indeed, "Pursuant to Federal Rule of Civil Procedure 10(c), when ruling on a Rule 12(b)(6) motion to dismiss, the Court may

consider 'documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim.'" EEOC v. Professional Freezing Servs., LLC, 15 F. Supp. 3d 783, 785 (N.D. Ill. 2013) (quoting Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994)); see also Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499 (2007); see also Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) ("the pleadings and exhibits attached thereto"); Beecher v. Jones, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *3 (N.D.Fla. Oct. 29, 2010) (unpublished op.) (considering documents filed by the plaintiff with a prior complaint) (citing Gross v. White, 340 F. App'x 527, 534 (11th Cir.2009) (unreported op.), and Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir.2000)).

Significantly, in Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) the court ruled that documents (affidavits and contracts) that are *not* incorporated by reference may nevertheless be considered "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." See also International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69 (US 2d Cir 1995) (finding extrinsic agreement is "integral" to

16

the complaint, and we consider its terms in deciding whether IAN can prove any set of facts that would entitle it to relief).

### *Argument*

Under the authority cited above, the Plaintiff's case should be dismissed based on the consideration of the four corners of the Amended Complaint and relevant video exhibits.

In the case at bar, the Plaintiff attempts to turn his own disciplinary violations and misconduct into a multi-count "indictment" of prison staff.  He attempts to weave together a dozen or so unrelated claims by threading a line of racial bias that is unsupported by any evidence.   In so doing he attempts to stack unsupportable claims one on another to "bootstrap" a case that, if one were to look at the claims individually, they would be easily refuted, one-by-one.   He concludes a conspiracy or battery occurred, but does not offer evidence to prove the elements of those claims.   See ECF No. 10, *generally*.

The only facts the Plaintiff offers are his *assertions*, which are not supported by any evidence and are refuted by the video evidence in this case:

*July 14, 2017 (A):*[6]

**Allegations**:

---

[6] The dates are identified A-O as in the Introduction (See pg. 3 of this Motion, above).

1. "[Defendants] conspired … to maliciously 'gas me,' and place me on 'strip' in retaliation against me for verbalizing complaints of filing grievances."  ECF No. 10, at 8, Para. 1.

2. "Howell made racial slurs."  Id., at 8, Para. 2.

3. Blitch threatened him that, "I'll be back with the extraction team to f--- you up!"  Moreover, Blitch threatened him, to wit, "He'd be f-ing me up again and it would be a lot worse the next time."  Id., at 8, Para 3.  Plaintiff indicated he was physically battered on this July 14, 2017.

**Facts Offered by Plaintiff in Support**:

1. None.

2. Plaintiff has not attached medical records, witness statements, or named witnesses that can testify that the officers entered a conspiracy or were motivated over anger regarding the grievances Plaintiff had filed, nor witnesses that actually heard any racially derogatory comments.  See ECF No. 10, *generally*.

**Objective Facts**:

1. The facility had cameras in B-wing outside Plaintiff's cell, which reveal the following:

   a. *Front Camera:* While there is no audio, the visual content suggests at approximately 8:21 am, the officers deployed the spray.  Their body

language is evocative of reluctance, rather than malice.  The completely

dispassionate attitude and lack of animus in their behavior is significant.

<u>See</u> Exhibit G.[7]  There is no one beating or attacking the Plaintiff or acting

in an aggressive manner toward him.  He is in the cell, while the officers

are all outside. The officers walk away from the cell.  At 8:26 am officers

return to Chestnut's cell.  At 8:29 am they walk him out of the cell, without

incident, and rather gently.  They do not drag him out or treat him roughly.

This footage wholly refutes the notion that the officers are out to "get" the

Plaintiff.

b. *Rear Camera:* This camera provides a better view of the officers walking

Plaintiff out of his cell.  We can clearly see the Plaintiff as he is walked

toward the camera.   He walks normally and has no visible injuries or any

indication of having been mistreated, at least from the distance observable.

*October 10, 2017 (B):*

**Allegations:**

1. Plaintiff alleges staff "slammed [him] down with extreme unnecessary force

   bursting open [his] chin." ECF No. 10, at 9, Para. 4.

2. Defendants abused him off camera.  <u>Id</u>.

---

[7] The Defendants are, contemporaneously with this Motion, filing a Motion to File Exhibits Under Seal, to wit, the video exhibits identified and cited herein.

19

3. The beating, says the Plaintiff, was in retaliation for grievances and driven by racial motivations.  Id., at 9, Para. 4.  Additionally, Plaintiff claims that Howell called him a n*****.

**Facts Offered by Plaintiff in Support**:

1. None.

2. Plaintiff has not attached medical records, witness statements, or named witnesses that can testify that the officers entered a conspiracy or were motivated over anger regarding the grievances Plaintiff had filed, nor witnesses that actually heard any racially derogatory comments.  See ECF No. 10, *generally*.

**Objective Facts:**

1. See video exhibits cited above, generally.

*April 4, 2018; April 5, 2018; April 9, 2018; and April 10, 2018 (C-F):*

**Allegations:**

1. Plaintiff alleges that Attaberry threatened to "kill [Plaintiff], starve [him] to death."  Attaberry stated he was attacking Plaintiff on behalf of "his brothers" (signifying a racial motive).  ECF No. 10, at 10, Para. 5.

2. Attaberry said "he'd teach me a lesson for f---ing with his brothers and snitching on officers."  Id.

**Facts Offered by Plaintiff in Support**:

1. None.

2. Plaintiff has not attached documentation, witness statements, or named witnesses that can testify that the officers entered a conspiracy or were motivated over anger regarding the grievances Plaintiff had filed, nor witnesses that actually heard any racially derogatory comments.  He has not offered any evidence to suggest he was ever denied food.  <u>See</u> ECF No. 10, *generally*.

**Objective Facts:**

1. The facility has video from the days leading up to the dates alleged in the Complaint, which are relevant and show the Plaintiff was engaged in repeated episodes of misconduct, refuting the alleged pattern of abuse and purposeful off-camera retaliation toward him as it is clear officers took actions *on camera* on multiple occasions when necessary to address Plaintiff's conduct:

   a. <u>*April 1, 2018, Front View*</u>:  We may observe officers outside Plaintiff's cell.  One officer is filming with a handheld camera; it appears that the officers are preparing to use chemical spray.  There is audio but it is difficult to hear precisely what is being said.  It is clear no one entered his cell to beat him.  No one used any racial epithets against him.  The officers,

as in the video referenced above were, if anything, reluctant participants. <u>See</u> Exhibit H.

b. *April 1, 2018, Rear View:*  This camera offers another view of the same events.  We are able to see officers walk by on their way to Plaintiff's cell, which is just off camera.  One officer is gloving up, others are standing around outside the cell.  There is no audio.  The footage is significant for what it does NOT show, i.e., no abuse of the Plaintiff of any kind.  Further, if there is something "wrong" occurring at least five officers would have to be "in" on it.  And these officers all seem calm, laid back, and easy-going about it—hardly the raging out of control, radical "skin heads" / "white supremacists" that Plaintiff paints a picture of.  ECF No. 10, at 10, Para. 5.

c. *April 2, 2018, Front View:*  There is audio and we can hear the Plaintiff, hollering.  It is obvious no one is hurting him, as he is in the cell, and officers are outside in the corridor and audibly and visually professional in their language and actions.  At 1:33 it appears that an officer walks up with a cannister of pepper spray.  An officer says, "he's cuffing up now."  It is clear that he was not "sprayed" at this time.  At 1:35 they walk the Plaintiff out.  He is hollering something which is unintelligible.  Physically, he appears fine (both in his appearance and movements).  The actions of the officers, in being downright gentle with the Plaintiff, belie the "threats to kill him" and "get" him alleged by Plaintiff.   <u>See</u> Exhibit I.

22

d. *April 2, 2018: Rear view:* At 1:35 we have another view of the officers escorting the Plaintiff, very gently by the arms.   No one is hurting or mistreating him.  The video refutes the Plaintiff's claims of conspiracy among this "white supremacist" "brotherhood."  ECF No. 10, at 10, Para. 5.  The video refutes that there was retaliation, or any pattern of retaliation, "for [Plaintiff] f—ing with [Attaberry's] brothers and snitching on officers."  Id.  The video shows the Plaintiff is just a hostile miscreant and gets in trouble for his behavior—that is what the four corners of his complaint, combined with the videos, shows.

e. *April 2, 2018 [this CD is labeled IG records 10 of 15]:*  The camera is at B-wing, first floor front.  We may hear unintelligible hollering by unknown subjects and observe officers walking by the Plaintiff's cell.  The officers walk the Plaintiff out at very end of this clip; they escort him, reasonably and appropriately by the arms, and he is walking normally.  See Exhibit J.

f. *April 2, 2018, IG 10 of 15, Rear view:*  Again, video footage shows there is no "there" to the complaint.  The officers are walking in the corridor, nonchalant, and calm.  At the very end, we get a close-up view of the Plaintiff, from behind, while he is being escorted from the area.  There are no signs of any beating, nor rough treatment, nor animosity toward the Plaintiff.  The latter appears to be speaking in an agitated manner, turning his head from side to side (there is no sound, so we must infer this from his

body language).  This is inconsistent with him being in fear or being subjected to a pattern of threats and brutality, as he alleges.  ECF No. 10, at 10, Para. 5.  Furthermore, as the Plaintiff speaks in this aggressive, or perhaps excited, manner, the officers conduct themselves like they are just "delivering the mail," cool and seemingly unaffected.  This refutes the notion of the Plaintiff running afoul of a racist "brotherhood" bent in retaliation.  ECF No. 10, *generally*.

g. _April 3, 2018_:  [No audio at first].  At 8:41 am officers walk down the hall with a cannister of spray.  [Audio:   hall is quiet].   <u>See</u> Exhibit K.

h. _April 3, 2018, Rear View_:  Apparently spray was applied.  The officers are wearing surgical-type masks.  In the final second we see the officers escorting the Plaintiff out, it is but a one-second view of the back of his head.  However, it is obvious no one is attacking him or yelling at him or mistreating him, and he appears uninjured.

_April 10, 2018 (F):_

**Allegations:**

1. Plaintiff claims that Off. Merritt threatened him, to wit, "I'm gonna f--- you up or have one of my brothers do it…we're gonna get you."   ECF No. 10, at 10, Para. 6.

2.  Plaintiff alleges racial discrimination and retaliation for being a problem for officers and filing complaints.  Id.  He alleges all the incidents listed in his complaint relate as they show a pattern indicating his life is in danger.   They stem from his history of grievance filing.   Id.

3.  Plaintiff claims Merritt participated in the July 14, 2017 "assault."  Id.

**Facts Offered by Plaintiff in Support**:

1.  None.

2.  Plaintiff has not attached documentation, witness statements, or named witnesses that can testify that the officers entered a conspiracy or were motivated over anger regarding the grievances Plaintiff had filed, nor witnesses that actually heard such comments.  See ECF No. 10, *generally*.

**Objective Facts:**

1.  Same as noted in sections above.

*April 12, 2018 (G):*

**Allegations:**

1.  Plaintiff claims Gillespie said, "[n]igger, I'll be back to f--- you up and I f--d up your property."  ECF No. 10, at 11, Para. 7.  Plaintiff alleges this is part of a pattern of racial discrimination.  Id.

**Facts Offered by Plaintiff in Support**:

25

1. None.

2. Plaintiff has not attached documentation, witness statements, or named witnesses that can testify that the officers entered a conspiracy or were motivated over anger regarding the grievances Plaintiff had filed, nor witnesses that actually heard such derogatory comments.  <u>See</u> ECF No. 10, *generally*.

**Objective Facts:**

1. Same as noted in sections above.

<u>April 30, 2018 (H, I):</u>

**Allegations:**

1. Plaintiff claims he was set up and "stabbed repeatedly" in furtherance of the racist brotherhood's efforts to get him.  Officer McCoy let it happen.  Later, the attacking inmate told Plaintiff he was paid to do this.  ECF No. 10, at 11, Para. 8.

2. After the stabbing, Gillespie and Scott attacked Plaintiff and said, "N*****
   didn't we tell you we were going to f*** you up?  We were hoping that
   n***** would've killed you."  Id., at 11, Para. 9.   Again, says Plaintiff, the
   officers referred to a brotherhood.  They made further threats, to wit, "[n]ext
   time we'll get it done the right way."  Id.

**Facts Offered by Plaintiff in Support**:

1. None.

2. Plaintiff has not attached documentation, witness statements, or named
   witnesses that can testify to what he has alleged here, nor medical records to
   show even the slightest injury to him.  He has not provided the name of the
   inmate who supposedly acted on the inducements of the Defendants.  See
   ECF No. 10, *generally*.

**Objective Facts:**

1. *April 30, 2018 Fixed-Wing camera:* The camera is from C-wing dayroom.  It
   shows Plaintiff and another inmate "getting into it", i.e., about to fight.  The
   officers separate the two men and take the man who appears to be Plaintiff
   to the floor in a textbook, "take-down move," which was the minimal force
   needed to gain compliance as the man continued to lunge at the other
   inmate.  The objective evidence shows the officers tried to STOP the fight,

and there were no knives involved.  As indicated herein, the "take-down" was done exactly as officers are trained, taking a man to the floor to gain compliance, which is the minimal force needed to stop the aggression, and does not hurt the subject.  While the man is on the floor, who is most likely the Plaintiff, no one is hitting him or doing anything to him other than keeping him on the floor, as is normal and reasonable to gain compliance. There is another inmate in the room, who did not participate in the altercation.  We can see him sitting on a bench, completely unconcerned about the situation.  Clearly no one is being brutalized or attacked.  The officers get the Plaintiff up at approximately 8:57 am.  There are no injuries to his face and no stab wounds.   See Exhibit L.

_May 4, 2018 (J)_:

**Allegations:**

1.  Plaintiff claims Off. Scott Gillespie gassed him "repeatedly."   Merritt said, "I told you I was coming to get you f***boy!"  ECF No. 10, at 12. Para. 10.

2.  Officers, Plaintiff alleges, put feces on his property.  Id.  These officers indicated this was done in retaliation to grievances and they threatened to "get" the Plaintiff again.  Id.

**Facts Offered by Plaintiff in Support**:

1. Affidavit of Elijah Bowden who claims officers provoked the Plaintiff and poured feces from "a cup."  ECF No. 1-3.

2. Plaintiff has not attached documentation, nor medical records.  The witness he offers to support his claims, offers mostly speculation (e.g., "Whatever they said provoked him to calling for audio and video.")  See ECF No. 10, *generally*.

**Objective Facts:**

1. *May 4, 2018* [note there are two videos on this cd]: First clip:  C-wing first floor front:  unknown subject hollering, unclear if it is Plaintiff or whom.  At 5:05 – 5:06 pm, officers give Plaintiff the command to, "turn around and cuff up."  They continue to try to gain compliance.  We hear the officers say, "Hey chestnut…[remainder unintelligible]."   See Exhibit M.

   *First floor rear:*  No audio.  At 5:02 pm, the officers appear to deploy the chemical spray.  The officers in the corridor step back from Plaintiff's cell.  No one is attacking him or gassing him "repeatedly."  C.f. ECF No. 10, at 12, *supra*.  The officers extract the Plaintiff from his cell, as in the other videos, walking him out normally and calmly.  There are no signs of brutal treatment or even anger on the part of the officers.  They seem more bored, or like they would rather be someplace else.   The objective footage refutes the Plaintiff's claims that these men were hellbent on "getting" the Plaintiff.

If they are committed to a conspiracy, it does not show up in their rather reluctant actions.  <u>C.f</u>. ECF No. 10, *generally*.  The video refutes the speculative assertions offered by witness, Inmate Bowden.

2. *Second Clip:* <u>C-wing first floor, Rear view</u>:  At 5:27 pm the officer, with a handheld camera, is filming the Plaintiff's cell.  The officers approach the cell and escort him out without incident.

*June 6, 2018 (K):*

**Allegations:**

1. Plaintiff claims Defendants threatened they would retaliate over his filing lawsuits.  ECF No. 10, at 12-13, Para. 11.  Plaintiff claims he was told that if he keeps writing complaints, "we're gonna get you."  <u>Id</u>.

2. Plaintiff asserts the Defendants sprayed him for no reason and hollered that Plaintiff was a snitch to place him in danger with the population.  <u>Id</u>.

**Facts Offered by Plaintiff in Support:**

1. None.

2. Plaintiff names no witnesses to corroborate any of this occurred.

**Objective Facts:**

1. *June 6, 2018*:  C-wing first floor, front.  At 12:21 pm, an unknown subject is hollering (possibly the Plaintiff).  We hear coughing sounds, possibly officers after the deployment of spray. "Hey back up … Back up."  Rear view:  One may observe officers filming with a handheld camera, outside the Plaintiff's cell.  The officers are calm, filming the situation, and we can see no anger or belligerence in their body language.  At 12:23 the officers can be seen cuffing the Plaintiff, normally, with no indication of anger or hostility.  Finally, we can see the officers walk the Plaintiff from his cell; they do so gently, and there are no apparent injuries to the Plaintiff, nor signs of distress notable from viewing the video evidence.  See Exhibit N.

*June 28, 2018 (L):*

**Allegations:**

1. Plaintiff claims officers battered him in the shower.  Atteberry stated, according to the Plaintiff, "[d]idn't I tell you I was going to kill you?"  ECF No. 10, at 13, Para. 12.

2. Plaintiff was injured so badly he "need[ed] a medical emergency."  Id.

**Facts Offered by Plaintiff in Support:**

1. Plaintiff offers the affidavit of Ronnie Ford, Jr.  ECF No. 1-4.

2. Plaintiff offers no medical records.

31

**Objective Facts:**

1. *6/28/18 FW:*  B-wing.  Has audio.  Plaintiff is actively resisting; he goes limp so the officers have to drag him down the hall.  They drag the Plaintiff, rather gently, using the minimum "force" necessary.  Arguably, he is fighting them—it is clearly active resistance.  The Plaintiff is flailing.  At the 11:00 minute mark the Plaintiff attempts to hook his legs around the officer's leg, which is an aggressive move, that could result in the officer falling to the ground.  It is indisputably an aggressive move by the Plaintiff.  It refutes the claims he made, above, where he portrays himself as the victim.  It refutes the claims made by Inmate Ford in his declaration.  There is no audio.  See Exhibit O.

2. *6/28 B-wing shower camera:*  The camera is outside the shower area.  The Plaintiff says, "I ain't goin' with ya."  The Plaintiff goes limp and will not stand up, obliging the officers to drag him out.  The objective video evidence refutes the claims made by the Plaintiff at ECF No. 10, at 13, Para. 12.  In addition, it refutes what Inmate Ford wrote in his affidavit ("dragging, pulling, and yanking" an unconscious man simply does not occur).  See ECF No. 1-4.

*September 17, 2018 (M):*
**Allegations:**

32

1. Plaintiff states he was threatened: "I told you you'd be seeing us again."

    ECF No. 10, at 13, Para. 13.

2. Next, he claims he was "maliciously gassed."  <u>Id</u>.

**Facts Offered by Plaintiff in Support:**

3. None.

4. Plaintiff offers no witness affidavits, nor medical records.

**Objective Facts:**

1. As the Plaintiff attempts to show a pattern of abuse, and a totality of the circumstances that show a discriminatory climate against him, the converse is equally relevant.  The Plaintiff's behavior and proclivity toward aggression is relevant.  Two wit, video from <u>*September 7, 2018*</u>: B wing second floor front:  We may hear screaming, presumably the Plaintiff.  We see officers running toward the sound, followed by further screaming (angry, cursing, unintelligible).  The officers seem concerned, appear calm, and do not display signs of anger.  <u>*Rear view*</u>: The officers extract the Plaintiff (they just walk him out of his cell, easily, without a "rough grasp" of his arms).  The Plaintiff takes advantage of the situation and "hauls off" and swings on the officer, attempting to strike the officer with a closed fist.  Plaintiff is definitely the aggressor.  He is not the victim, just an angry, disagreeable

fellow.  The officers take Plaintiff back in the cell.  An officer with a handheld camera arrives, filming into the cell.  This evidence refutes the pattern of behavior that officers do things "off camera," acting upon a racial bias.  See ECF No. 10, generally.  The video directly contradicts these claims.  Even after the Plaintiff attempts to punch an officer, the staff members are not raging out of control.  They are quite calm in their body language.  See Exhibit P.

*October 1, 2018 (N):*

**Allegations:**

1. Attaberry, according to Plaintiff, said, "I don't see how I didn't kill you're a\*\* when I beat you in the head with my radio," and threatened him again. "We're still gonna get you . . . inmates already got paid to kill you."  ECF No. 10, at 14, Para. 14.

**Facts Offered by Plaintiff in Support:**

1. None.

2. Plaintiff offers no witness affidavits, nor medical records.

**Objective Facts:**

1. Same as indicated above.

*December 7, 2018 (O):*

**Allegations:**

1. Plaintiff claims Attaberry threatened him and Brown beat him.  He claims he was kicked in the mouth and lost consciousness.  ECF No. 10, at 14-15, Para. 15.

2. Plaintiff claims Lola threatened him: "I'm gonna call my friends in Suwannee…better keep your mouth shut."  Plaintiff claims Suwannee officials continued threatening behavior when he got to that facility:  "We got phone calls about you from FSP."  Id.  Finally, Plaintiff claims Williams and Brown falsified DR reports about the beating.  Id.

**Facts Offered by Plaintiff in Support:**

1. None.

2. Plaintiff offers no witness affidavits, DR paperwork, nor medical records.

**Objective Facts:**

1. *12/7/18 FW:*  The camera is in the Dress Out area.  The officers walk the Plaintiff out of his cell at approximately 6:05 minutes in.  No one is hurting him.   He appears to be hollering, irate or excited.  There is no audio.  See Exhibit Q.

The video evidence cited above wholly refutes the notion of a widespread conspiracy based on race, which must be true if Plaintiff's claims are to go forward.   The video directly refutes the charges of brutality and battery.   Much like crying "fire" in a crowded theatre, Plaintiff cries "beating" and "racism" for their incendiary nature, but they are mere labels and conclusions.

Case precedent that addresses the sufficiency of a claim is instructive as to the sufficiency of Plaintiff's showing of imminent danger.   For example, the Court in Riggins v. Walter, 279 F.3d 422 (7th Cir. 1995) considered a very similar claim, i.e. that the defendant violated the plaintiff's right to due process by placing him into *punitive* segregation.   However, one of the ***exhibits*** that the Riggins plaintiff submitted to support his claim stated that he was put in segregation under *investigative* status; thus, the claim was directly refuted and dismissal of the claim was proper.   See also Avila v. Cate, 2011 WL 2680844 (E.D. Cal. 2011) (when attached exhibit contradicts allegations in pleadings, exhibit trumps pleadings).

Furthermore, the Plaintiff's formulaic recitation of the elements of causes of action indicative of "imminent danger" will not do.   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   The law "demands more than an unadorned, the-defendant-unlawfully¬harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (supra). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (Id.). The factual allegations "must be

enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at

555.  Finally, *conclusory allegations* are not entitled to a presumption of truth.

<u>Iqbal</u>, 556 U.S. at 680-81 (supra); <u>Associated Builders, Inc. v. Ala. Power Co.</u>, 505

F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as

true").  This authority is persuasive as to the issue raised herein.

## <u>CONCLUSION</u>

For the reasons outlined herein, the Second Amended Complaint should be

dismissed without prejudice as it pertains to his Litigation History.   As it

pertains to the "imminent danger" exception, we would respectfully submit the

Plaintiff's IFP status should be revoked and the case dismissed *without prejudice*.

**WHEREFORE**, we respectfully request that this Honorable Court enter an

Order dismissing the Plaintiff's Second Amended Complaint against the above-

named Defendants.

DATED: 5 August 2019.


Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

<u>/s/</u> Jeremy A. Mutz
Jeremy A. Mutz
Senior Assistant Attorney General
Florida Bar No.: 0721026

Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3636 – Telephone
(850) 488-4872 – Facsimile
Jeremy.Mutz@myfloridalegal.com

/s/ Kristen Lonergan
Kristen Lonergan
Assistant Attorney General
Florida Bar No.:  125556
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3739 – Telephone
(850) 488-4872 – Facsimile
KristenLonergan@myfloridalegal.com

## LOCAL RULE 3.01(G) CERTIFICATE

Undersigned counsel hereby certifies that no conference is required because this is a motion to dismiss for failure to state a claim upon which relief can be granted.

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was e-filed electronically through CM/ECF and furnished by United States Mail to: Gernard D. Chestnut, DC#130146, Suwannee Correctional Inst., 5964 US-90, Live Oak, FL 32060, on this the 5th day of August 2019.

/s/ Jeremy A. Mutz
Jeremy A. Mutz

38